UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
ROOSEVELT ROSE,

                :

          Plaintiff,        <u>REPORT & RECOMMENDATION</u>

                :

     -against-           06 Civ. 464 (GEL)(MHD)

                :

CORRECTION OFFICER MASIEY
#4610 <u>et</u> <u>al.</u>,           :

          Defendants.   :
------------------------------x
ROOSEVELT ROSE,

                :

          Plaintiff,

                :

     -against-           05 Civ. 8829 (GEL)(MHD)

                :

CITY OF NEW YORK DEPARTMENT
OF CORRECTION <u>ET</u> <u>AL.</u>,     :

          Defendants.   :
------------------------------x
ROOSEVELT ROSE,

                :

          Plaintiff,

                :

     -against-           05 Civ. 8828 (GEL)(MHD)

                :

CITY OF NEW YORK DEPARTMENT
OF CORRECTION <u>ET</u> <u>AL.</u>,     :

          Defendants.    :
------------------------------x

TO THE HONORABLE GERARD E. LYNCH, U.S.D.J.:


     <u>Pro</u> <u>se</u> plaintiff Roosevelt Rose is an inmate in the New York

City correctional system. In three lawsuits filed in 2005 and 2006,

he has sued thirteen identified correctional officers from three

Rikers Island facilities -- the Anna M. Kross Center ("AMKC"), the

1

Otis Bantum Correction Center ("OBCC") and the George Motchan Detention Center ("GMDC") -- as well as Brian Riordan, who is the Warden of the AMKC; Carlis E. Thompson, the acting warden of the OBCC; Warden Walsh, the Warden of the GMDC; Martin Horn, who is the Commissioner of the New York City Department of Correction; and several other individuals.[1] Invoking 42 U.S.C. § 1983, plaintiff asserts claims for denial of his First and Fourteenth Amendment right to practice his religion, for which he seeks damages and injunctive relief.[2]

Defendants have filed virtually identical motions in each case, under Fed. R. Civ. P. 12(b)(6), seeking to dismiss the complaints in their entirety. In support of those motions, they press five grounds: (1) that the complaints fail to state a claim because plaintiff's allegations demonstrate that he has not

_____

[1] In the first of plaintiff's cases, he has named an Imam Muhammad of the OBCC, as well as Alvin Mack, the manager of its commissary. (Am. Compl. (No. 05 Civ. 8828), at p. 1, 4).

[2] These three lawsuits press essentially the same claims, although their list of defendants only partially overlap. They are now docketed respectively as Rose v. Muhammad, No. 05 Civ. 8828 (S.D.N.Y. filed Oct. 18, 2005); Rose v. Morgan, No. 05 Civ. 8829 (S.D.N.Y. filed Oct. 18, 2005); and Rose v. Correction Officer Masiey #4610, No. 06 Civ. 464 (S.D.N.Y. filed Jan. 23, 2006). In the first two, Rose filed amended complaints, which are the target of defendants' first two motions. In the third, he filed only one version of the complaint but has since asked for leave to amend that complaint, although he has not specified in what respect he wished to amend.

2

exhausted his prison remedies, as required by 42 U.S.C. § 1997e(a);
(2) that plaintiff lacks standing to assert one of his claims,
which is based on the prison's alleged sale of non-Halal food at
its commissary; (3) that his claims against the individual
defendants should be dismissed because he fails adequately to
allege the defendants' personal participation in the constitutional
torts that he asserts; (4) that the claims against these defendants
should be dismissed because, based on the allegations of the
complaint, they are immune from liability; and (5) that the
complaints fail to state a claim because their allegations do not
properly plead a violation of plaintiff's rights under the Free
Exercise Clause of the First Amendment.


    A. <u>Plaintiff's Claims</u>


    These lawsuits are among a group of more than a dozen cases
filed more or less contemporaneously by current or former Muslim
inmates at the Rikers Island prison facilities, all of whom
complain about the handling of food and related items at the prison
dining facilities. All allege that the New York City Department of
Correction ("DOC") has failed to provide them with meals that
comply with the Halal requirements of their faith, and has thereby
denied them the free exercise of their religion, in violation of
their First and Fourteenth Amendment rights.

These lawsuits were originally filed pro se, and hence their factual allegations lack some degree of precision, although, fairly construed, it is apparent that they are all complaining of essentially the same practices. In the case of Mr. Rose, as reflected in the amended complaints in the first two cases and the original complaint in the third case, he alleges that prison personnel have failed to provide proper Halal meals to Muslim inmates, himself included, in a variety of ways. These include the stacking and washing together of Halal and non-Halal trays, the use of soap that contains pork by-products, the failure to cook thoroughly the Halal meat, the failure to separate the Halal from the non-Halal utensils and food pans and carts, the failure to identify the Halal utensils and other kitchen items, and the failure to provide Halal meals to prisoners returning from court. (Am. Compls. (Nos. 05 Civ. 8828, 05 Civ. 8829) at pp. 5-a to d, 5-f to g). He also targets the manner in which food items are sold at the commissaries, alleging that they sell both Halal and non-Halal foods but fail to identify which are Halal, a practice that ultimately results in the contamination of the Halal food trays at the prison dining facilities. (See Am. Compls. (Nos. 05 Civ. 8828, 05 Civ. 8829) at pp. 5-a to d, 5-f to H).

Rose further states that he filed grievances with each of the Rikers Island prison facilities at which he was confined and that

there was no "result" from those grievances. (Am. Compls. (Nos. 05 Civ. 8828, 05 Civ. 8829) at p. 3). He also alleges that the defendant wardens and Commissioner, as well as all of the other defendants, were notified of these problems (Am. Compls. (Nos. 05 Civ. 8828, 05 Civ. 8829) at pp. 5-f, 5-H), and that he himself notified the wardens and Commissioner. (Am. Compls. (Nos. 05 Civ. 8828, 05 Civ. 8829) at p. 5-a).

We read plaintiff's allegations liberally in deference to his pro se status, e.g., Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994), as well as because defendants seek dismissal under Rule 12(b)(6). E.g., Achtman v. Kirby, McInerney & Squire, LLC, 464 F.3d 328, 337 (2d Cir. 2006). We infer that, except where Rose makes additional allegations, he is asserting the same claims, and in substance making the same allegations, as the pro se plaintiffs in the parallel cases. Moreover, we read his pleadings in light of the more specific allegations made by the one plaintiff among this group who subsequently obtained representation by pro bono counsel -- a set of allegations that are described in Wesley v. Muhammad, 2008 WL 123812 (S.D.N.Y. Jan. 10, 2008).

As explained in Wesley, the claims in these cases concern two different sets of practices that are said to violate the rights of Muslim inmates. One set concerns the alleged failure of the prison

facilities to adhere to Islamic religious tenets in food preparation and cleanup in the prison dining facilities. These failings, which assertedly also violate a DOC directive, involve the stacking and washing together of trays that are used to serve Halal and non-Halal meals, thereby contaminating the trays reserved for Halal food[3]; the washing of trays with soap that contains pork by-products; use of cooking ingredients with pork by-products; and the failure to cook Halal meats thoroughly, as required by Halal rules. Id. at *1, 11. See also Randolph v. City of New York Dep't of Correction, 2007 WL 26602082, *2 (S.D.N.Y. Sept. 7, 2007). The other violation, according to Wesley, is that the prison commissaries sell both Halal and non-Halal food products without identifying which products are in fact non-Halal, a failing that, according to Wesley, leads to Muslim inmates unknowingly purchasing non-Halal food products at the commissary and then placing those products on the dining hall food trays that are reserved for Halal foods, thereby contaminating the trays for those inmates and for all other observant inmates who subsequently use the same trays. Id. at *1, 5.

---

[3] According to the Wesley complaint, the DOC dining facilities color-code the trays, with one color designating trays for Halal food and another for non-Halal food. Wesley, 2008 WL 123812 at *1. This separation is apparently done to avoid what would otherwise be possible contamination of the Halal food if it were placed on trays that have previously been used to carry non-Halal food. It also identifies to serving personnel whether the inmate wants Halal food.

As for the role of the defendants named in Rose's lawsuits, he alleges that the corrections officers all work at the prison commissaries and are thus responsible for the sale of non-Halal food items without identification of their non-Halal status, thus resulting in food tray contamination. (See Am. Compls. (Nos. 05 Civ. 8828, 8829) at pp. 5-a to b, 5-d to H, 7-a). He further asserts that Commissioner, the wardens and the manager of the OBCC commissary have all been repeatedly notified of the cited failures to provide proper Halal meals and the sale of unidentified non-Halal foods at the commissaries, and that they have failed to act to correct these problems. (See Am. Compls. (Nos. 05 Civ. 8828, 8829) at pp. 5-a, 5-f, 5-H, 7-a).

As reflected in the reports and recommendations we issued in three of the parallel cases, Rose's allegations of the defendants' personal involvement parallel those found in the other cases. The corrections officers named as defendants in those cases appear to have been assigned to work at the prison commissary, and the supervisory defendants -- in those cases the DOC Commissioner and the Warden of the AMKC -- were named because they had been notified of the problems alluded to in these parallel cases and had allegedly failed to respond or deal with those problems. See, e.g., Wesley, 2008 WL 123812 at *2, 6-7; Randolph, 2007 WL 26602082 at *2; Mason v. Masley, 06 Civ. 1829 (GEL), Report & Recommendation at

5-6 (S.D.N.Y. Feb. 11, 2008).

## B. Defendants' Motion

Defendants press five grounds for dismissal of the complaints, all predicated on what defendants contend are fatal deficiencies in the complaints.[4] First, they assert that the complaints fail to state a claim because their allegations reflect that plaintiff did not exhaust his prison administrative remedies. Second, they argue that plaintiff lacks standing to assert a claim based on the sale of non-Halal food items at the prison commissaries, asserting that the complaints do not suggest that plaintiff unknowingly bought and consumed such items. Third, they argue that plaintiff does not adequately allege the personal participation of the defendants in the wrongdoing about which he is complaining. Fourth, they assert that they are protected from liability by a qualified immunity defense. Fifth, they urge that the allegations of the complaints do not state a claim for violation of plaintiff's First Amendment right to the free exercise of his religion.

---

[4] As is the case in the parallel lawsuits by other Rikers Island inmates, the only evidence proffered by defendants is a copy of the DOC regulations that govern the procedures for filing and pursuing inmate grievances. (See Decls. of Ass't Corp. Counsel Kimberly Conway, executed May 7, 2007, Ex. A).

Plaintiff has not responded to these motions, but has filed an application in his latest case to amend his complaint, although he does not indicate in what respect he seeks to amend his pleading.

## ANALYSIS

We address defendants' arguments in the order in which they make them. Because these arguments repeat in large measure the analysis that these and other defendants have made in four previously decided dismissal motions in parallel Rikers Island cases,[5] we will shorten our discussion, incorporating by reference or citation the assessments that we have made of these arguments in the earlier decisions.

### A. Exhaustion

In plaintiff's three complaints he alleges that he attempted to utilize the prison grievance system to air each of the claims that he makes here. He also says that he did not receive a response to his grievances, and that he further notified the supervisory defendants, including the wardens and the Commissioner, again without response. (Am. Compls. (Nos. 05 Civ. 8828, 8829) at pp. 3,

---

[5] Defendants here are represented by the same counsel as in the other cases.

5-a, 5-f to H, 7-a; Compl. (No. 06 Civ. 464), at pp. 3-5 & Exs. A-C). These allegations are consistent with the assertions of the four other plaintiffs in the parallel cases whose exhaustion status has also been challenged by defendants and adjudicated by this court.

The short answer to defendants' argument, as we have previously observed, is that a plaintiff is not obliged to allege his compliance with the exhaustion requirements of the Prison Litigation Reform Act, and that it is the defendants' burden both to plead this affirmative defense and to prove its applicability. The somewhat longer answer is that in any event (a) the allegations in Rose's complaints to which defendants seem to point as the basis for their argument do not clearly demonstrate that plaintiff failed to comply with the exhaustion requirement and (b) if he complied incompletely, the complaints do not preclude the application of one or more of the exceptions to complete exhaustion recognized by the Second Circuit (if, for example, corrections personnel prevented or interfered with an inmate's efforts to exhaust his remedies or simply ignored his grievance). See, e.g., Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004). For further details of this analysis, we incorporate by reference our discussion of these issues found in Wesley v. Muhhamad, 2008 WL 123812 at *3-4; Randolph v. City of New York Dep't of Correction, 2007 WL 2660282 at *4-9; Robinson v. New

10

York City Dep't of Correction, 06 Civ. 945 (GEL), R&R at 5-17 and Mason, 06 Civ. 1829 (GEL), R&R at 8-9.

## B. Plaintiff's Standing

Defendants next focus on plaintiff's allegations concerning the failure to identify non-Halal food products sold at the commissaries. They argue that he lacks standing to press this claim since he does not suggest that he ever erroneously purchased and consumed non-Halal products from the commissaries.

Plaintiff states in his third complaint that he did in fact purchase products at the commissary which he learned, upon reading the ingredient lists after making his purchases, were not Halal. (Compl. (No. 06 Civ. 464) at 3). Although plaintiff does not suggest that he consumed non-Halal items purchased unknowingly from the commissary, we read plaintiff's allegations and claim in light of specific allegation in the Wesley complaint that the unknowing purchase of non-Halal items at the commissary by observant Muslim inmates leads to contamination of the trays upon which supposedly Halal meals are served. See Wesley, 2008 123812 at *1, 5.

The same standing defense was invoked by the defendants in Randolph, and we upheld it there. See Randolph, 2007 WL 2660282 at

*9-10. The reason for that result was that we understood Randolph's claim to be simply that Muslim inmates were misled into purchasing and consuming non-Halal foods, and we concluded that he lacked standing because he failed to "allege, or even hint, that he has ever unknowingly purchased a pork product from the commissary, much less consumed it, and his allegations -- in which he references specific products sold at the commissary that he asserts contain pork or pork by-products [cite omitted]-- strongly indicate that he is aware of which commissary items his religious beliefs preclude him from using." Id. at *9.

By contrast, in Wesley plaintiff's counsel made clear that the claim concerning the commissary was based on the assertion that observant inmates other than the plaintiff who mistakenly purchase pork products at the commissary then place those food items on the purportedly Halal trays at the dining facility, thus contaminating those trays. Since all plaintiffs allege that the Halal trays are not properly washed, it follows that this claim is based on injury to all Muslim inmates -- the various plaintiffs included -- since even if they do not buy non-Halal foods at the commissary, they all use the Halal trays and hence are exposed to the pork contamination assertedly caused by the challenged commissary practices. See Wesley, 2008 WL 123812, at *5-6, 12.

12

Reading plaintiff's pleading in light of <u>Wesley</u>, we conclude that he does allege sufficient facts to form a basis for finding that he is claiming to have been injured by virtue of the contamination of the Halal trays in the manner described, whether through his own purchase of non-Halal food or through the consumption of non-Halal commissary items by other observant Muslim inmates.[6] That suffices to allege injury to plaintiff and hence standing.

## C. <u>Pleading of Defendants' Roles</u>

Defendants next assert that plaintiff has failed to specify the individual responsibility of each of the defendants for the wrongs about which he complains. As we have noted, a plaintiff is required to plead and prove such involvement. <u>See</u>, <u>e.g.</u>, <u>Randolph</u>, 2007 WL 2660282, at *10 (citing <u>inter alia</u> <u>Iqbal v. Hasty</u>, 490 F.3d 143, 152-53 (2d Cir. 2007); <u>Hendricks v. Coughlin</u>, 114 F.3d 390, 394 (2d Cir. 1997)). Given plaintiff's status as a <u>pro se</u> litigant and his fairly specific allegations of personal involvement of all but one defendant, we conclude that his pleadings pass Rule

---

[6] It bears noting that even plaintiff's <u>pro se</u> complaints, if carefully read, seem to rest on the same reasoning as Wesley's pleading. (<u>See</u>, <u>e.g.</u>, Am. Compl. (No. 05 Civ. 8828) at p. 5-a)("With the Pork being Sold to the General Population, And touching the[ir] trays, and the Halal Trays being Stack[ed] and Wash[ed] together this is a Form of Contamination to the Halal Meal.").

12(b)(6) muster on this point except as to a single defendant.

Like the complaints in Randolph, Wesley and Mason, plaintiff refers to the individually named corrections officers as having worked at the prison commissary and having either participated in or allowed the sale of non-Halal food products without providing any list or other means for Muslim inmates to identify which foods were non-Halal. (Compare e.g., Wesley Second Amended Compl. at ¶¶ 6(h)-(n), 37-42, 44-45). For reasons discussed at length in Randolph and Wesley, we conclude that Rose's allegations against these officers, which parallel those found in those two cases, sufficiently allege the defendants' participation in the identified practices at the commissaries that plaintiff asserts have violated his right to the free exercise of his religion. See Wesley, 2008 WL 123812 at *4-9; Randolph, 2007 WL 2660282 at *10-12.

As for the supervisory defendants named by plaintiff -- DOC Commissioner Horn, Wardens Riordan, Thompson and Walsh, and OBCC commissary manager Alvin Mack -- defendants again contend that their responsibility for the wrongs alleged by plaintiff is insufficiently identified in his complaint. This argument is also a repeat of arguments made in Randolph and Wesley, and we reject defendants' contentions for the same reasons.

Apart from alleging the defendant supervisors' respective institutional positions, Rose asserts that he notified each of them about the problems, and he alleges as well in substance that nothing was done to correct the situation. From these allegations, we may infer -- based on the rather flexible standard that applies to complaints targeted by a Rule 12(b)(6) motion and the still more liberal test that applies to the pleadings of an untutored <u>pro</u> <u>se</u> litigant -- that plaintiff is alleging that the Commissioner, the wardens and the commissary manager failed to correct constitutional violations of which they had actual notice, were grossly negligent in managing subordinates in this respect, and displayed deliberate indifference to plaintiff's First Amendment right to practice his religion. Such allegations suffice to state a claim for supervisory liability.  <u>See</u>, <u>e.g.</u>, <u>Randolph</u>, 2007 WL 2660282 at *10 (citing <u>inter alia Iqbal</u>, 490 F.3d at 152-53).

In any event, two of these defendants -- Commissioner Horn and Warden Riordan -- were also named as defendants in <u>Randolph</u> and in <u>Wesley</u>, and the complaints in those cases plainly illustrate the nature of the responsibility that Rose is attributing to these senior officials of the DOC for the complained-of practices cited in both the prison commissary and the dining facility. For the reasons noted in both <u>Randolph</u> and <u>Wesley</u>, plaintiff's allegations, when read in the light of those complaints, adequately plead

supervisory liability on the part of these defendants. <u>See</u> <u>id.</u> at *11-12; <u>Wesley</u>, 2008 WL 123812 at *7-9.[7]

Finally, we note that the one defendant to whom plaintiff does not refer in the body of the complaint in which he is named as a defendant is the imam of OBCC, Imam Muhammad. (Am. Compl. (No. 05 Civ. 8828) <u>passim</u>.). Since plaintiff makes no reference to him at all, we conclude that the complaint fails to allege his participation in any wrongdoing, and for that reason the complaint should be dismissed as against this one defendant.

D. <u>Immunity</u>

Defendants next seek to invoke a qualified-immunity defense on behalf of all of the defendants, and in doing so they rely solely on the allegations of the complaint. Plaintiff's allegations closely parallel those in the <u>Randolph</u> and <u>Wesley</u> cases, and we

---

[7] We have noted that plaintiff also alleges that inmates returning from court are denied Halal meals, a claim that defendants do not explicitly address. In any event, plaintiff has standing to assert this claim, since he alleges that at one point he was a pre-trial detainee (Am. Compl. (No. 05 Civ. 8828) at p. 5-f), and hence it may be inferred that on one or more occasions he was taken to court and then denied a Halal meal. Plaintiff does not allege the specific responsibility of any one defendant for this apparently systemic failing, but since he represents that he has notified the wardens and the Commissioner of the problems concerning which he is now complaining, we infer that they are appropriately named defendants on this claim as well.

conclude that the immunity defense applies here in the same manner as it does in those other cases with the exception of its application to some of the corrections officer defendants.

In _Wesley_ and _Randolph_, we concluded that immunity was properly invoked to absolve the corrections officer defendants of liability. We inferred that their inclusion as defendants was based solely on their work at the commissaries, a role that could not trigger liability since (1) there was no reason for them to have believed that the sale of non-Halal products at the commissary violated any inmate's rights, and (2) their only stated role involved selling products at the commissary or supervising inmates in those sales, a function that offers no basis for inferring that they had any control over whether the commissaries provided identification of which food products were non-Halal. See _Randolph_, 2007 WL 26660282 at *13-14; _Wesley_, 2008 WL 123812 at *12. This reasoning applies as well to plaintiff's complaint in his third lawsuit, in which he merely alleges that the corrections officer defendants worked in the AMKC commissary during his incarceration and that the commissary sold items containing pork or pork by-products. (See Compl. (06 Civ. 0464) at 3). Thus, we recommend that the commissary claims against the corrections officer defendants in

that case be dismissed.[8]

In contrast, in the complaints in Rose's first two suits, he alleges that "[a]ll the CORRECTION OFFICER[]S are List[ed], Because they all got Notice from the[ir] Superviser about the Violation's and Still Continue to Sell Pork in the Commissary at [GMDC and OBCC]." (Am. Compls. (Nos. 05 Civ. 8828, 8829) at 5-H). We liberally construe this allegation to indicate that the corrections officer defendants were told by one or more of their supervisors that the sale of items containing pork and pork-by products without notifying observant Muslim inmates that they are non-Halal violated the constitutional or statutory rights of those inmates. We further infer that plaintiff is alleging that the officers were instructed to cease that practice but did not do so. In light of these allegations, and in contrast to Wesley and Randolph, we conclude that a trier of fact could find that the correction officer defendants had reason to believe their actions were constitutionally suspect or otherwise unlawful. Thus, immunity cannot be granted to them at this stage on the commissary claim.

Immunity also cannot be granted to the supervisory defendants either on the claims regarding food preparation and washing

_____

[8] The officers named in that complaint are Correction Officers Masley (sued as "Masiey"), Gerris, Brown, Allen, Patterson, Santaluna and Chadwick.

procedures at the dining facility. As noted in both <u>Randolph</u> and <u>Wesley</u>, settled Supreme Court and Second Circuit precedent and the defendants' presumptive knowledge of Muslim dietary requirements should have made clear to the Commissioner and other senior supervisors that cooking Halal foods with pork-based products, failing to cook Halal meats thoroughly, stacking and washing Halal and non-Halal trays together and using pork-based soap to wash Halal trays violated the religious tenets of Muslim inmates and therefore violated their right to the free exercise of their religion. <u>See</u> <u>Randolph</u>, 2007 WL 2660282 at *14-16; <u>Wesley</u>, 2008 WL 123812 at *9-12.[9]

Finally, immunity must be denied the supervisory defendants on plaintiff's commissary claims insofar as they are construed consistently with the equivalent claim in <u>Wesley</u>. As we noted in that case, the plaintiff was alleging that the failure to identify non-Halal food products at the commissary led to the contamination of Halal trays in the dining facility, thus violating the First Amendment rights of Muslim inmates. On that basis and in view of the allegation that the Commissioner and the AMKC warden knew of the problem and failed to act, we concluded that they could not be granted immunity on this claim based solely on the face of the

---

[9] The same may be said for the alleged practice of the Rikers prison facilities in not serving Halal meals to prisoners returning from court.

complaint. <u>Wesley</u>, 2008 WL 123812 at *12. The same result necessarily follows in this case for the Commissioner, the three wardens and the manager of the OBCC commissary.

E. <u>Pleading of a Free-Exercise Claim</u>

Finally, defendants in this case argue that the complaints fail to allege the elements of a violation of plaintiff's rights under the Free Exercise Clause of the First Amendment. In substance, they seem to say that the protection of that amendment is limited, in the current context, to the supplying of non-pork food to Muslim inmates and does not extend to the sorts of practices targeted by plaintiff, including the stacking and washing together of non-Halal trays, the use of non-pork products in cooking Halal food and washing the Halal trays, the failure to cook meats thoroughly, the contamination of Halal trays by exposure to non-Halal foods from the commissary and the failure to provide Halal meals to inmates arriving at the prison from court. This analysis parallels arguments made by the defendants in <u>Randolph</u> and <u>Wesley</u>, although in those motions they pursued these arguments principally in the guise of an immunity defense. We rejected the same arguments there since they ignored controlling Supreme Court and Second Circuit law. See <u>Wesley</u>, 2008 WL 123812 at *9-11 (citing <u>inter</u> <u>alia</u> <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984); <u>McEachin v. McGuinnis</u>, 357 F.3d 197, 203 (2d Cir. 2004); <u>Ford v.</u>

McGinnis, 352 F.3d 582, 597 (2d Cir. 2003); Benjamin v. Coughlin, 905 F.2d 571, 579 (2d Cir. 1990)). Necessarily, we reject them here as well; indeed, they are still weaker when pressed in the guise of a failure-to-state-a-claim defense.

## CONCLUSION

_____For the reasons stated, we recommend that defendants' motions to dismiss be granted with respect to the claims against correction officer defendants Masley, Gerris, Brown, Allen, Patterson, Santaluna and Chadwick in Rose v. Correction Officer Masiey #4610 (No. 06 Civ. 464) and Imam Muhammad (named in 05 Civ. 8828), and should otherwise be denied.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Gerard E. Lynch, Room 910, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72,

6(a), 6(e); <u>Thomas v. Arn</u>, 470 U.S. 140, 150-52 (1985); <u>DeLeon v.</u>
<u>Strack</u>, 234 F.3d 84, 86 (2d Cir. 2000) (<u>citing</u> <u>Small v. Sec'y of</u>
<u>Health and Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989)).


**Dated: New York, New York**
    **February 19, 2008**

_____
**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**


Copies of the foregoing Report and Recommendation have been mailed
today to:

Mr. Roosevelt Rose
C/O Mrs. Aree Kendricks
164-37 109th Ave
South Jamaica, NY 11432

Mr. Roosevelt Rose
#441-07-08937
1600 Hazen St. OBCC/CPSU
East Elmhurst, NY 11370

Kimberly Conway, Esq.
Assistant Corporation Counsel
   for the City of New York
100 Church Street
New York, New York 10007